[Civ. No. 25952. Second Dist., Div. Two. Aug. 16, 1962.]

ANNA M. DUFFY et al., Plaintiffs and Respondents, v. GRIFFITH COMPANY, Defendant and Appellant.

782

Belcher, Henzie & Fargo for Defendant and Appellant.

Cushman & Grover and M. B. Grover for Plaintiffs and Respondents.

ASHBURN, J.—Defendant Griffith Company appeals from a judgment entered upon a jury verdict in this action for wrongful death of Raymond Francis Duffy. Defendant Wesley J. Foster was the owner of a sprinkler truck which was being driven by defendant Benjamin Sams at the time of the accident. Sams was in the general employment of Foster who had leased the truck with the driver to Griffith Company for use in certain construction work which it was doing at Los Angeles International Airport. The verdict and judgment ran against Foster and Sams as well as Griffith Company. All filed notices of appeal but Foster and Sams later abandoned their appeals, leaving Griffith Company as the sole appellant herein.

There is no real controversy over the fact that Griffith Company was Sams' special employer, or the fact that the accident was due to Sams' negligence.[1] Appellant's main contention is that Sams was not acting in the course and scope of his employment by appellant at the time of the accident because he was on his way to his place of work and thus came within the "going and coming" rule.

The lease of the truck and driver had been in effect for some two months before the day of the accident. At the end of each

---

[1]The notice of appeal herein contains this: "Griffith Company expressly waiving any appeal upon the ground that the defendant Sams was not negligent or that his negligence was not a proximate cause of the death of decedent Duffy. . . ."

work day defendant truck driver Sams, pursuant to instructions from truck owner Foster, his general employer, would take the water truck away from the job site to a Shell station some distance from the airport where the truck would be serviced and parked for the night. Sams lived about a mile or a mile and a half from the service station and furnished his own transportation to and from that place. On Monday morning, November 24, 1958, defendant Sams picked up the water truck at the Shell station. He then proceeded with the truck toward the job site of defendant Griffith Company at the airport. Sams proceeded north on Lincoln Boulevard to a point where he intended to turn left into a service road which led to the job site. As he was making his left turn, and while still within the confines of Lincoln Boulevard, the truck was involved in a multiple vehicle collision and Raymond Francis Duffy was killed. At the time of the accident, the water truck had not reached either the service road to the job site or the job site.

The trial court instructed the jury that at the time of the accident defendant Sams was operating the truck of defendant Foster as the agent for Foster and defendant Griffith Company, that the acts and omissions, if any, of Sams were, in contemplation of law, the acts and omissions of defendants Foster and Griffith Company, and that if one of said defendants was liable all three were liable. The question on this appeal is whether the trial court committed reversible error in so instructing the jury.

The parties agree that all the evidence bearing on the relationship between appellant and the driver Sams is contained in the testimony of Sams. He testified that he was driving the water truck at the time of the accident; it was owned by Foster and he was employed by Foster; the truck was being worked for Griffith Company at International Airport and this had been going on for about two months; he was supposed to report at the airport for work at 7 a. m.; the time was set by Griffith; he left at 4:30 p. m., the time being set by Griffith. "Q. And from seven until four-thirty, would it be fair to say that you were under their supervision and control? A. Yes." He picked up the truck every morning including the day of the accident at Shell's service station at Hawthorne and Century Boulevards. He there cleaned the windshield, checked the oil, put gas in the tank and on the morning of the accident checked the lights, all of which were working. "Then after it was gassed and everything, I took

off." Sams would drive to the job site of Griffith every day, reporting to the same job site most every day. "Q. And you were under the supervision, direction and control of the Griffith Company on this job, weren't you? A. Yes. Q. And you went wherever the Griffith Company told you to go. Isn't that correct? A. Yes. Q. And if they told you to report to this job site, you would go to that job site? A. Yes, sir. Q. And if they told you to be there at seven o'clock, you were there at seven. Is that correct? A. Yes, sir. Q. If they told you to be there at five-thirty you would be there at five-thirty, wouldn't you? A. Yes, sir. Q. And it was your duty in working for the Griffith Company to have that truck at the job site, gassed, lubricated, whatever servicing it needed and ready to go on the day's work. Isn't that correct? A. Yes, sir. Q. And throughout the entire day, if the Griffith Company or their supervisors would ask you to do something differently, than you were accustomed to doing it, you would do it the way they asked you to do it. Isn't that right? A. To the best of my ability, yes, sir." He was on Foster's payroll and would see him only when he went to pick up his pay check and once in a while on the job, but Foster did not direct any of his activities on the job. Griffith Company was giving all instructions as to what to do. On the morning of the accident Sams was moving the truck from the place where it was parked overnight to an area designated by Griffith. Foster was the one that had told him where to park the truck overnight. He was using it for his own transportation from that parking place to the area designated for work by Griffith. "Q. And had the Griffith Construction Company told you that they wanted you to use a different route other than the one that you were using, you would have taken such different route, wouldn't you? A. Yes, sir."

The answer of Griffith Company raised the issues of no negligence on its part and contributory negligence imputable to decedent. All three defendants were represented at the trial by the same attorney.[2] At the close of the evidence he made a motion for directed verdict on behalf of all of them based on the ground of contributory negligence. "Both sides have rested, all sides having rested, the defendants Sams, Foster and Griffith Company will respectfully move the court for a directed verdict in favor of those defendants on the grounds, a directed verdict in favor of those defendants and against the plaintiffs Duffy and plaintiff Block on the grounds

---

[2] Appellant's present attorneys were not in the case at that time.

that the respective plaintiff cases themselves show contributory negligence as a matter of law on the part of Mr. Block. Contributory negligence as a matter of law on defendant Nahas which because of the employment between the deceased Duffy and the defendant Nahas would be imputable and imputed to the deceased Duffy. That's all." The motion was denied and then defense counsel said: "May I make one further? Before we go any further, I might say that I had intended prior to having done some research over the week end to move for a judgment of non-suit and/or directed verdict on behalf of defendant Griffith Company as against all of the plaintiffs on the ground of special employment, however, my research inclines me to believe that there is a special employment between Sams and the truck and the Griffith Company and I don't think it would lie, however that being the case, I believe that since the responsibility under respondeat superior for any negligence which may be attributed to Sams lies with the Griffith Company. For that reason it would not lie with Foster and his only liability here would be as owner of the truck and for that reason, I would like a stipulation that as to defendant Foster any verdict in excess of the statutory limit be waived. MR. GROVER [Attorney for plaintiffs Duffy] : I'm not going to stipulate to anything. Your policy undoubtedly covers him and covers Sams as an additional insurer. . . . MR. JOHNSON [Attorney for defendant Galanis] : Are you conceding that this man Sams was in the scope of employment with the Griffith Company? MR. NYE: Yes, unfortunately, that's what I think the law is. I have to concede. MR. JOHNSON: I think you're right. MR. NYE: I didn't until I spent some time in the library and let's say I confirmed my early suspicions. May I back up once more? I keep forgetting about your client. May the motion for a directed verdict on the grounds made be also against the cross-complainant Galanis? THE COURT: Yes."

In his opening argument counsel for plaintiff remarked: "For me to ask you to hold the Griffith Construction Company liable for the death of my clients' father and husband, I have to show that there was an agency existing between Mr. Sams and the Griffith Construction Company. I think the evidence is clear on that and Mr. Nye concedes that at the time that this accident occurred that Mr. Sams was a special employee subject to the direction and control of the Griffith Construction Company and, therefore, was an agent for the purposes of this law suit. That any negligence on the part of Mr. Sams

that was an approximate cause in the death of Mr. Duffy is transferred, not away from Mr. Sams, but along with Mr. Sams to the corporation and the corporation is liable.''

Counsel for defendant Griffith Company argued to the jury in part as follows: ''There are certain other things which are obvious here. They have been alluded to already. With regard to the defendant Sams, Foster and Griffith, I do agree, as Mr. Grover indicated, that if you find that Mr. Sams is liable to any or all of the plaintiffs, you will also have to find that Mr. Foster was and so was the Griffith Company and that is for this reason. Insofar as Mr. Foster is concerned, he was the owner of the truck and liability that the driver or anyone he allows to drive has is automatically his, too, because it was his truck. You loan me your car and I get in an accident, through my negligence you are responsible, too, up to a certain amount which is not important here. The Griffith Company were at that time the special employers of Mr. Sams and for that reason they, too, are responsible for any negligence that Mr. Sams might have committed within the course and scope of that employment. There isn't any question but that at the time of that accident Mr. Sams was within the course and scope of his employment, so if you find that Mr. Sams is liable, you will, of course, automatically make the same determination as to the other defendants. The exact reverse is, of course, also true if for any reason, and I will discuss with you many of them over the next few moments, you are to find that Mr. Sams is not liable to any or all of these questions and it just follows just as automatically and for the same reasons that neither are Mr. Foster or the Griffith Company.''

The court thereupon instructed the jury as follows: ''There are three defendants in the action of Block and Bethel versus Sams, Foster and Griffith Company. Under the law if one is liable, all are liable. Therefore it follows that if you return a verdict against one of the defendants you must return a verdict against all. It is established that defendant Benjamin Aldo Sams, who was operating the truck involved in the accident in question, was acting as agent for the defendants, Wesley J. Foster and the Griffith Company, and within the scope of their authority at the time of the events out of which the accident occurred. Therefore, the acts and omissions, if any, of that agent were, in contemplation of law, the acts and omissions, respectively of his principals, the defendants Wesley J. Foster and the Griffith Company.''

Verdict and judgment having been rendered against all

three defendants a joint motion for new trial was presented in due course, but it was accompanied by declaration of the manager of Griffith Company to the effect that Sams was not acting as agent or employee of that company at the time of the accident; also one made by the assistant treasurer of the company saying that counsel's concession made at the trial as to the scope of authority of Sams was not authorized by Griffith Company, that no request was received for authority to make such concession and had such authority been requested it would have been refused.

Appellant argues that the uncontradicted evidence shows a case of special employment which leaves only the general employer liable for any negligence of the employee (relying upon such cases as *Billig* v. *Southern Pac. Co.*, 189 Cal. 477, 485 [209 P. 241]; *Doty* v. *Lacey*, 114 Cal.App.2d 73, 77 [249 P.2d 550]; *Nussbaum* v. *Traung Label & Lithograph Co.*, 46 Cal.App. 561 [189 P. 728]), also that counsel's concession that Griffith Company would be liable for any proximate negligence of the special employee was an attempt to give away substantial rights of the client which did not lie within the implied authority of trial counsel and was not authorized in fact. We discuss these claims in the reverse order.

 There is nothing in the record to suggest bad faith or fraud on the part of defendants' attorney. On the contrary it affirmatively appears that he had studied over the weekend the problem of liability of Griffith Company as special employer and had arrived at the stated conclusion. The effect of what he said was to withdraw the claim that Sams was not acting for Griffith Company within the scope of his authority and to rest the company's defense upon the issue of contributory negligence. This counsel had a right to do without consulting the client. The trial attorney is in full charge of his client's cause or defense. When representing the defendant he must determine in the first instance what defenses shall be averred and what potential ones shall be omitted. At the trial he must have and exercise discretion to make such tactical decisions as the exigencies of the combat may dictate. His is the legal knowledge and skill that must be consulted in that connection, not the views of a layman; often the decision must be made with celerity and precision. Specifically his is the prerogative of withdrawing one of two defenses when he concludes that it cannot be sustained and that its fruitless pursuit may prejudice the other sound defense. Perhaps it may develop that he was mistaken in his

judgment but that does not condemn him or retroactively sweep away his authority. If it appears that the attorney was negligent in the matter the client's remedy is against him personally. The trial judge and opposing counsel are justified in relying upon the apparent and presumptive authority of the attorney and in acting upon that basis.

The picture presented by this record is one of invited error, if it be assumed arguendo that defense counsel was mistaken in this instance. The court's instruction that if Sams was liable all three defendants were liable was undoubtedly brought about by counsel's concession which we have been considering. ▮ *Jentick* v. *Pacific Gas & Elec. Co.*, 18 Cal. 2d 117, 121 [114 P.2d 343] : "Under the doctrine of 'invited error' a party cannot successfully take advantage of error committed by the court at his request. Thus, on appeal a litigant cannot object to the admission of incompetent evidence offered by him. [Citation.] He cannot complain of error in instructions requested by him. [Citations.] Nor can he challenge a finding of the trial court made at his instance. [Citations.] In the present case, therefore, defendant cannot attack a verdict resulting from an erroneous instruction which it prompted. [Citations.]" See also *Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626, 630 [275 P.2d 761] ; *People* v. *Miller,* 185 Cal.App.2d 59, 82 [8 Cal.Rptr. 91].

The correct view seems to be that the court did not err in this instance for it was justified in relying upon counsel's withdrawal of the particular issue. *Scafidi* v. *Western Loan & Bldg. Co.,* 72 Cal.App.2d 550, 561 [165 P.2d 260]. "These admissions by plaintiffs' counsel made directly to the trial court had the immediate effect of eliminating from plaintiffs' complaint the allegations set forth in section VII thereof, to wit: 'That from time to time plaintiffs demanded from said defendants . . . accounting of all moneys . . . which said defendants had, from time to time, promised and agreed to render,' because these admissions were and are an express concession that the said allegations were in fact untrue and could not be supported by proof. . . . The right of the trial court to act on these admissions in testing the sufficiency of plaintiffs' complaint was full and complete. In *Oscanyan* v. *Winchester R. Arms Co.,* 103 U.S. 261 [26 L.Ed. 539], Mr. Justice Field speaking for the court said (p. 263) : 'In the trial of a cause the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would other-

wise be called. They may limit the demand made or the set-off claimed. *Indeed, any fact, bearing upon the issues involved, admitted by counsel,* may be the *ground of the court's procedure equally as if established by the clearest proof.* And if in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion or that of counsel, act upon it and close the case.' (Italics ours.)'' *In re Callahan,* 106 Misc. 202 [174 N.Y.S. 268, 271] : ''It has long been settled that the authority of an attorney extends to the management of the case in all the exigencies which arise during its progress, and that, in the absence of fraud, his authority cannot be questioned by his client because of the want of specific authority to do the act done or consented to.'' *In re Level Club* (D.C.S.D.N.Y.) 46 F.2d 1002, 1004: ''It is obvious that, in the absence of clearly established fraud, an intentional act of an attorney in a litigation—such as the appearance and consent to an adjudication here involved—cannot be set aside. If there is any dispute as to whether such an act by an attorney in a litigated case was authorized, it is a matter which must be dealt with between the attorney and his client, for it involves their private relations only and not their relations to the Court or to the opposing parties.''

We do not overlook the general proposition thus quoted with approval in *Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.,* 45 Cal.2d 448, 460 [289 P.2d 466] : '' '[T]he implied general authority of an attorney does not include any power or authority to dispose of the client's substantive rights. . . .' ''[3] But the selection of issues to be pursued and the abandonment of those deemed by the attorney to be untenable do not fall in that category.

*Gagnon, supra,* further says at page 460: ''And further in that connection: 'In civil litigation, the attorney, as the client's agent, and in the absence of fraud, has authority to bind his client in all matters pertaining to the regular conduct of a case. . . . In the absence of such special instructions the conduct and management of the action is entrusted to the attorney's judgment; he decides what should be contested, what points should be taken, and what should be

[3]To the same effect are appellant's cited authorities: 5 Am.Jur. § 70, p. 300; 46 Cal.Jur.2d § 4, p. 6; *Price* v. *McComish,* 22 Cal.App.2d 92, 96 [70 P.2d 978]; *Ross* v. *Ross,* 120 Cal.App.2d 70, 74 [260 P.2d 652]; *Redsted* v. *Weiss,* 71 Cal.App.2d 660, 663 [163 P.2d 105].

abandoned. This authority is, however, subject to the qualification that an attorney ordinarily does not have implied authority to do an act which will effect the surrender or loss of a client's substantial rights, for the client determines "the objectives to be attended." ' [Citation.] There is, however, a presumption that he has authority to compromise his client's action which he is prosecuting. [Citations.] . . . [A]nd it has been held that an attorney has authority to dismiss an action with prejudice (the modern name for retraxit, [citations]) contrary to the rule at common law. [Citations.] While the above cited cases may appear to conflict with the rule that ordinarily an attorney has no authority to surrender his client's rights [citations], they may be reconciled on the theory that there is a rebuttable presumption that he had such authority." The question there decided was whether plaintiffs' attorney in a certain prior action had authority to dismiss the action with prejudice and the court answered it in the affirmative. Many other cases attest the binding effect in the same action of the trial attorney's exercise of judgment in matters pertaining to proper conduct of the trial.

*Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler,* 12 Cal.2d 98, 105 [81 P.2d 913] : "It is common experience that attorneys and their clients frequently differ and even violently disagree between or among themselves with reference to the conduct or the procedure which should relate to the trial of the action. However, it is well established law that the attorney has complete charge and supervision of the procedure that is to be adopted and pursued in the trial of an action; and in accordance with that law, if Eversole [the attorney] wished to have a jury trial he had a right to insist that the trial be so conducted. In the case entitled *Price* v. *McComish,* 22 Cal. App.2d 92 [70 P.2d 978], the court said that, subject to the rule that an attorney in the conduct of a case may not impair the substantial rights of his client, nevertheless, '. . . it is well established that, especially in what may be termed purely procedural matters . . . an attorney is fully authorized' to bind his client. [Citations.] And again in the case entitled *Union Central Life Ins. Co.* v. *Anderson,* 291 Ill.App. 423 [10 N.E.2d 46, 52], the court said, 'When one puts his case in the hands of an attorney, it is a reasonable presumption that the authority conferred includes such actions as the attorney, in his superior knowledge of the law, may decide to be legal, proper, or necessary in the prosecution of the suit. . . . Attor-

neys may . . . of necessity make disposition of many things that arise in and about the trial of cases.' " At page 106: " 'When one hires an attorney to represent him in litigation, that attorney has full charge of the case as far as procedure and remedy are concerned. He is trained and skilled in the law. A client has no knowledge of procedure and intrusts this to the attorney he employs. In 2 Ruling Case Law, section 63, page 986, we find the following: "An attorney of record, by virtue of his employment as such, subject to the approval of the court, has implied authority to do all acts necessary and proper to the regular and orderly conduct of the case, and affecting the remedy only and not the cause of action, and such acts, in the absence of fraud, will be binding on the client, though done without consulting him, *and even against his wishes.*" (Italics added.).... "But all the proceedings in court to enforce the remedy, to bring the claim, demand, cause of action or subject matter of the suit to hearing, trial, determination, judgment and execution are within the exclusive control of the attorney." ' "

*Bemer* v. *Bemer,* 152 Cal.App.2d 766, 771 [314 P.2d 114]: "There can be no doubt that an attorney can bind his client in any step in an action by his agreement entered upon the minutes of the court. [Citation.] A stipulation may lawfully include or limit issues or defenses to be tried, whether or not such issues or defenses are pleaded. [Citations.]" Accord: *Petroleum Midway Co.* v. *Zahn,* 62 Cal.App.2d 645, 649 [145 P.2d 371]; *Corbett* v. *Benioff,* 126 Cal.App. 772, 776-777 [14 P.2d 1028].

*Nahhas* v. *Pacific Greyhound Lines,* 192 Cal.App.2d 145 [13 Cal.Rptr. 299]. In this case the client insisted in open court that his attorney call a certain witness and the attorney declined. The court said, at page 146: "It is the prerogative of counsel, if not his duty, where he is of the opinion it would be detrimental to the best interests of the case he is presenting to have a certain witness testify, to refuse to call such witness, and even to persuade the clients against their expressed wishes to submit to his decision.

" '. . . It is common experience that attorneys and their clients frequently differ and even violently disagree between or among themselves with reference to the conduct or the procedure which should relate to the trial of the action. However, it is well established law that the attorney has complete charge and supervision of the procedure that is to be adopted and pursued in the trial of an action. . . .' " *Newman* v. *Los*

*Angeles Transit Lines,* 120 Cal.App.2d 685, 695 [262 P.2d 95], is to the same effect.

*Holmes* v. *Rogers,* 13 Cal. 191, 200: ''We do not consider it at all necessary to go behind the decree to ascertain any facts touching the alleged agreements or the authority to make them.

''Attorneys appeared in Court and consented to it. In their discretion, they supposed, doubtless, that this was the best they could do for their clients; and we do not conceive ourselves called upon to supervise its exercise. It scarcely needed the multitude of authorities which the learned counsel for the Respondents have cited upon their brief, to show that a decree, fairly entered by consent of the Attorney, is as binding upon his client as a decree entered after the most pertinacious resistance. The judgment of counsel is trusted in the management and conduct of a lawsuit. He must decide, in the absence, at all events, of express instructions, whether or how long he will contest, what points he will take, and what abandon.'' At page 201: ''It cannot be pretended with reason that this decree was rendered by mistake. To make this defense availing, the mistake must be an excusable error, unmixed with any fault or negligence on the part of the party, or his Attorney; for the negligence or default of the Attorney in such cases is that of his principal. Here the Attorneys were in full possession of all the materials of the defense, and it is not pretended that by any practices of the plaintiff they were prevented from making it available. If we tolerated the principle invoked, it would lead to most serious evils. It would be to the interest of the party that his counsel should mismanage his case; since he could, by not waging his defense, place himself in a better position than if he used all diligence and effort on the trial.''

*People* v. *Merkouris,* 46 Cal.2d 540, 554 [297 P.2d 999]: ''Defendant was represented by counsel and 'It is settled that the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, *so that neither the party himself* [citations], nor another attorney [citations], can be recognized by the court in the conduct or disposition of the case. [Citations.]' (Emphasis added [citations].) Considering the fact that defense counsel desired to proceed with the trial on the plea of not guilty by reason of insanity and the further fact that a doubt existed as to defendant's sanity, it appears that the trial court clearly abused its discretion in permitting defendant personally to

withdraw his plea of not guilty by reason of insanity." *Dale v. City Court of Merced,* 105 Cal.App.2d 602, 606 [234 P.2d 110], holds that in misdemeanor cases before inferior courts the defendant's attorney may in the absence of defendant plead him guilty or not guilty or make any other plea authorized by the statutes. (See also *Shores Co. v. Iowa Chemical Co.,* 222 Iowa 347 [268 N.W. 581, 582, 106 A.L.R. 198]; *In re Cusimano's Will,* 174 Misc. 1068 [22 N.Y.S.2d 677, 680]; *Coker v. Coker,* 224 N.C. 450 [31 S.E.2d 364, 366]; 5 Am.Jur. § 85, p. 311, § 91, p. 314; 7 C.J.S. § 80, p. 899; 6 Cal.Jur.2d § 156, pp. 340-341.)

On a parity with the foregoing authorities are those relating to admissions made by counsel during the trial.

*Bank of America v. Lamb Finance Co.,* 145 Cal.App.2d 702 [303 P.2d 86]. Defendants' counsel in open court admitted his client's liability on the note in suit. ▆▆▆ This court said, at page 708: "In the absence of fraud, the admissions of an attorney in open court are binding upon the client. (*Bias v. Reed,* 169 Cal. 33, 37 [145 P. 516]; *Taylor v. Randall,* 5 Cal. 79, 80; *People v. Hammond,* 26 Cal.App.2d 145, 150 [48 P.2d 1172].) The effect of this admission was to eliminate from the case any issue of the company's liability on the note. (*Scafidi v. Western Loan & Bldg. Co.,* 72 Cal.App.2d 550, 561-562 [165 P.2d 260].) Its liability being conceded, the company cannot on appeal be heard to say that it suffered prejudice in being denied trial by jury upon an issue that was removed from the case by its own concession." (To the same effect see *Gonzales v. Pacific Greyhound Lines,* 34 Cal.2d 749, 754-755 [214 P.2d 809]; *Bias v. Reed,* 169 Cal. 33, 37 [145 P. 516]; *Taylor v. Randall,* 5 Cal. 79, 80; *People v. Hammond,* 26 Cal.App.2d 145, 148-149 [48 P.2d 1172]; 6 Cal.Jur.2d § 159, p. 347; 7 C.J.S. § 100b, p. 920.)

The foregoing authorities clearly sustain the right of defendants' attorney to abandon the issue of scope of authority, acting as he was in good faith and after study of the matter; also the right of opposing counsel and the court to act upon the basis of liability of the special employer as declared by its attorney; the error if any in the court's instruction was invited error which affords no basis for complaint on appeal.

The soundness of the attorney's judgment formed after research is really not before us, but in view of appellant's contention that there was no basis for it whatever we feel prompted to say that the matter is not as simple as appellant's attorneys assume and assert.

On the morning of the accident the driver Sams had furnished his own transportation from his home to the service station where the sprinkler truck was parked. It had to have gas and oil and radiator water in order to do the Griffith job. Presumably those things could only be had outside the airport property. Had Sams left those premises during the daytime to go to a gas station for these necessities and then returned to the job there could be little question that the trip was so closely connected with the Griffith work that it would be ruled within the course and scope of his employment. Certainly Sams was not acting for himself when driving from Shell's service station to his place of work. What he was doing seems to have been for the Griffith Company as well as Foster. The facts that Foster had told him where to park the truck at night and where to get the gas and oil (which Foster was bound to supply) do not necessarily compel the conclusion that Sams was not performing acts which were incidental to and in furtherance of his work for Griffith Company. The question seems a close one.

*Kish* v. *California S. Automobile Assn.*, 190 Cal. 246, 249 [212 P. 27]: "In determining whether a particular act is within the scope of the servant's employment, it is obvious that if the servant is directly engaged in the duties which he was employed to perform, or if his acts are directly producing the result desired by the master, that the servant is at that time in the course of his employment. It is not, however, necessary in order to hold the master liable, that the servant shall be engaged in the direct performance of the thing which is the ultimate object of his employment, for also included within the scope of the servant's employment are those acts which incidentally or indirectly contribute to the service. [Citations.]

"The test, as laid down in *Chamberlain* v. *Southern California Edison Co.*, 167 Cal. 500 [140 P. 25], for determining whether or not a particular act was done in the course of the servant's employment 'is whether the act was done in the prosecution of the business in which the servant was employed to assist.' The act of the servant must be connected directly or indirectly with the business of the employer and be in furtherance of the object for which the servant was employed. In other words, if the act is for the benefit of the employer, either directly or incidentally, the act is within the general scope of the servant's employment, but if the act performed is not in any way connected with the service for

which he is employed, but for his own particular and peculiar purpose, then the act is not within the scope of the employment." (To the same effect see *Loper* v. *Morrison*, 23 Cal.2d 600, 605-606 [145 P.2d 1]; *Industrial Indem. Exch.* v. *Industrial Acc. Com.*, 26 Cal.2d 130, 136-137 [156 P.2d 926]; 35 Am.Jur. § 553, pp. 986 and 987, § 557, p. 991; 60 C.J.S. § 437, p. 1102; *Hubbard* v. *Lock Joint Pipe Co.* (D.C.E.D. Mo.) 70 F.Supp. 589, 592-593.)

Counsel have cited and we have found no case discussing this question where it requires a determination of whether the servant was acting for the general or the special employer or both at the time of accident. It is unnecessary for us to decide it for we perceive that there is room for difference of opinion in this case and hence the prerogative of deciding whether the particular issue should be presented lay with defendants' trial attorney, not the court of review.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied September 12, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 10, 1962.