[L. A. No. 29404. In Bank. Feb. 3, 1969.]

MARIAN CARR LINSK, Plaintiff, Cross-defendant and Appellant, v. LESTER LINSK, Defendant, Cross-complainant and Respondent.

Howard M. Redlich and Harry M. Fain for Plaintiff, Cross-defendant and Appellant.

Rogers & Harris, Gang, Tyre & Brown and Stanley Rogers for Defendant, Cross-complainant and Respondent.

MOSK, J.—Plaintiff wife brought an action for divorce against defendant husband, who filed a cross-complaint, also seeking a divorce. The original proceedings ended in a mistrial due to the disability of the trial judge who heard the evidence.

Subsequently plaintiff's attorney stipulated over his client's express objection that the case could be decided by a different judge entirely on the basis of the record previously made. Counsel for both parties were aware of plaintiff's objections, as was the presiding judge, who nevertheless accepted the stipulation and assigned the case to a trial court. There the trial judge, not shown by the record to be advised of the adamant position of plaintiff, examined only the record at the prior trial and, without hearing testimony, entered judgment against plaintiff on her complaint and in favor of defendant on his cross-complaint. Plaintiff appeals therefrom, maintaining that the court exceeded its jurisdiction in proceeding to determine the matter on the record of the prior trial pursuant to a stipulation made by plaintiff's attorney over her express objection. We conclude that this contention is meritorious and the judgment must be reversed.

Plaintiff and defendant were married in 1958 and separated in 1965. In November of that year plaintiff filed a complaint for divorce on the ground of extreme cruelty and defendant filed an answer and cross-complaint, also alleging extreme cruelty. A trial was held before Judge Albert E. Wheatcroft of the Los Angeles Superior Court. After 11 days of trial, during which testimony was taken and various exhibits received in evidence, the case was submitted on June 1, 1966. Shortly thereafter Judge Wheatcroft became incapacitated due to an accident, and he vacated submission of the case, declared a mistrial and transferred the action back to the presiding judge of the superior court.

On August 5, 1966, plaintiff, her attorney, and defendant's attorneys met with the presiding judge of the court in his chambers. Plaintiff's attorney reported that plaintiff had not

signed a stipulation, apparently discussed previously between the parties, to submit the matter to the presiding judge on the record made during the trial previously held. The presiding judge indicated that he desired both parties to sign the stipulation and suggested that counsel explore the matter with plaintiff privately. Plaintiff and her attorney thereupon left the room. The attorney returned to chambers alone and informed both the judge and defendant's attorneys that plaintiff refused to sign the proposed stipulation. The judge then declared the attorneys alone could stipulate that the case be heard by another judge, who could decide the issues solely upon the transcript of the testimony and exhibits introduced at the previous trial unless that judge desired additional testimony. Such a stipulation was made by the attorneys.[1]

The case was assigned to Judge Bayard Rhone, who was not shown by the record to have been advised of the foregoing events. Ultimately he denied plaintiff a divorce and granted a divorce to defendant on the basis of the record made in the trial held before Judge Wheatcroft. No additional testimony was taken. In a memorandum decision the judge indicated that plaintiff had not offered sufficient corroboration of her testimony to justify granting her a divorce.

Plaintiff moved for a new trial on the ground, inter alia, that her attorney did not have the authority over her objections to enter into a stipulation that the action could be decided upon the record made in the prior trial.

Section 283 of the Code of Civil Procedure provides that an attorney may bind his client "in any of the steps of an action or proceeding." ■ The attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action but he may not impair the client's substantial rights or the cause of action itself. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.* (1955) 45 Cal.2d 448, 460 [289 P.2d 466] ;[2] *Zurich Gen. Acc. & Liab.*

[1]Defendant claims that in the discussion held in chambers plaintiff did not object to the submission of her case on the record made in the prior trial but objected only to having the presiding judge hear the matter on that record. Therefore, argues defendant, "[T]he implication was that it depended upon which judge heard the case, not upon what evidence the judge based his decision." However, it is clear that the only stipulation presented to plaintiff and which she refused to sign provided not merely that the case could be decided by a judge other than the one who heard the testimony but also that the issue would be determined solely on the basis of the record at the prior trial.

[2]In *Gagnon* it was held that there may be a rebuttable presumption that an attorney has the power to surrender his client's substantive rights. The present case does not invlove a situation in which such a

*Ins. Co., Ltd.* v. *Kinsler* (1938) 12 Cal.2d 98, 105-106 [81 P.2d 913]; *Duffy* v. *Griffith Co.* (1962) 206 Cal.App.2d 780, 790 [24 Cal.Rptr. 161].) ▇▇ The extent of an attorney's powers in this regard has been aptly described as follows: "In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client." (*Armstrong* v. *Brown* (1936) 12 Cal.App.2d 22, 28 [54 P.2d 1118].)

Under the foregoing concept it has been held that an attorney may refuse to call a witness even though his client desires that the witness testify (*Nahhas* v. *Pacific Greyhound Lines* (1961) 192 Cal.App.2d 145, 146 [13 Cal.Rptr. 299]); may abandon a defense he deems to be unmeritorious (*Duffy* v. *Griffith Co.* (1962) *supra,* 206 Cal.App.2d 780, 793; but see *Robinson* v. *Sacramento City etc. School Dist.* (1966) 245 Cal. App.2d 278, 287 [53 Cal.Rptr. 781]); may stipulate that the trial judge could view the premises (*Lachman Bros.* v. *Muenzer* (1956) 143 Cal.App.2d 520, 525 [300 P.2d 295]), that a witness, if called, would give substantially the same testimony as a prior witness (*Newman* v. *Los Angeles Transit Lines* (1953) 120 Cal.App.2d 685, 695 [262 P.2d 95]) and that the testimony of a witness in a prior trial be used in a later action (*Smith* v. *Whittier* (1892) 95 Cal. 279, 289 [30 P. 529]); and he may waive the late filing of a complaint (*Union Storage & Transfer Co.* v. *Smith* (1953) 79 N.D. 605 [58 N.W.2d 782, 786]).[3]

On the other hand, an attorney may not, by virtue of his general authority over the conduct of the action, stipulate that his client's premises constituted an unsafe place to work where such a stipulation would dispose of the client's sole interest in the premises (*Harness* v. *Pacific Curtainwall Co.*

_____

presumption could be applied since it was clear to the attorneys for both parties as well as the judge who accepted the stipulation that it was entered into over plaintiff's objections.

[3]In *Zurich Gen. Acc. & Liab. Ins. Co., Ltd.* v. *Kinsler* (1938) *supra,* 12 Cal.2d 98, 105, it was said by way of dictum that an attorney may, over his client's objections, insist that a case be tried before a jury. (See also *Harness* v. *Pacific Curtainwall Co.* (1965) 235 Cal.App.2d 485, 490 [45 Cal.Rptr. 454].)

(1965) *supra,* 235 Cal.App.2d 485, 491), nor may he stipulate to a matter which would eliminate an essential defense (*Fresno City High School Dist.* v. *Dillon* (1939) 34 Cal.App.2d 636, 646-647 [94 P.2d 86]). He may not agree to the entry of a default judgment (*Ross* v. *Ross* (1953) 120 Cal.App.2d 70, 74 [260 P.2d 652]), or a summary judgment against his client (*Roscoe Moss Co.* v. *Roggero* (1966) 246 Cal.App.2d 781, 786-787 [54 Cal.Rptr. 911]), may not compromise his client's claim (*Bice* v. *Stevens* (1958) 160 Cal.App.2d 222, 231 [325 P.2d 244]), or stipulate that only nominal damages may be awarded (*Price* v. *McComish* (1937) 22 Cal.App.2d 92, 99 [70 P.2d 978]), and he cannot agree to an increase in the amount of the judgment against his client (*Knowlton* v. *Mackenzie* (1895) 110 Cal. 183, 188-189 [42 P. 580]). Likewise, an attorney is without authority to waive findings so that no appeal can be prosecuted (*Wuest* v. *Wuest* (1942) 53 Cal.App.2d 339, 344-345 [127 P.2d 934], but see *Fowlkes* v. *Ingraham* (1947) 81 Cal.App.2d 745, 747 [185 P.2d 379], criticized in 1 Witkin, Cal. Procedure (1954) § 47, pp. 58-59), or agree that a judgment may be made payable in gold coin rather than in legal tender (*Merritt* v. *Wilcox* (1877) 52 Cal. 238, 242).

An attorney is also forbidden without authorization to stipulate that the opposing party's failure to comply with a statute would not be pleaded as a defense (*De Long* v. *Owsley's Ex'x* (1948) 308 Ky. 128 [213 S.W.2d 806, 807]), or to write a letter to a creditor asking it to join in a bankruptcy petition where he has been employed only to institute bankruptcy proceedings (*B. F. Goodrich Rubber Co.* v. *Holland* (1931) 159 Miss. 346 [131 So. 882, 883]), and he may not bind his client by a statement that it stands ready to pay a stated sum (*Couch* v. *Landers* (Mo. 1958) 316 S.W.2d 588, 592-593) or that if the jury finds for plaintiff the amount of the verdict would constitute a landlord's lien against livestock (*Noska* v. *Mills* (Tex.Civ.App. 1940) 141 S.W.2d 429, 432).

The dichotomy in the foregoing cases appears to relate to whether the attorney has relinquished a substantial right of his client in entering into a stipulation on his behalf. ▮ If counsel merely employs his best discretion in protecting the client's rights and achieving the client's fundamental goals, his authority to proceed in any appropriate manner has been unquestioned. On the other hand, if counsel abdicates a substantial right of the client contrary to express instructions, he exceeds his authority.

▮ It seems incontrovertible that the right of a party to

have the trier of fact observe his demeanor, and that of his adversary and other witnesses, during examination and cross-examination is so crucial to a party's cause of action that an attorney cannot be permitted to waive by stipulation such right as to all the testimony in a trial when the stipulation is contrary to the express wishes of his client.[4] Indeed it has been held that the very right to trial contemplates the "right to be present at and to participate in every phase of the trial." (*Estate of Meyer* (1953) 116 Cal.App.2d 498, 502-503 [251 P.2d 430].) ■ A trial judge's personal observation of the deportment of witnesses is particularly significant where, as here, both parties prayed that the court grant them a divorce and each testified to acts of extreme cruelty by the other during the course of the marriage. Defendant does not deny that plaintiff was entitled to a decision upon the controverted facts from the judge who heard the evidence, absent a waiver of that right. (*Guardianship of Sullivan* (1904) 143 Cal. 462, 467 [77 P. 153]; see *Blache* v. *Blache* (1951) 37 Cal.2d 531, 535 [233 P.2d 547].)

■ It is urged by defendant that plaintiff either waived her objection or is estopped to deny the authority of her attorney to enter into the stipulation because she failed to interpose a challenge in this respect until approximately six weeks after the case was taken under submission. The stipulation was made on August 5 and judgment for defendant was rendered on August 12, one week later. The question of the attorney's authority was raised in the points and authorities filed in support of the motion for a new trial on September 19.

It was unmistakably clear to the presiding judge who accepted the stipulation as well as to the attorneys for both parties that plaintiff obdurately refused to accede to the procedure followed. Since the record does not disclose that she was aware the case had been assigned to another judge, that she was at any time present in Judge Rhone's courtroom, or

---

[4]In *Smith* v. *Whittier* (1892) *supra*, 95 Cal. 279, 289, it was held that an attorney is authorized to stipulate that the testimony of a particular witness at a prior trial could be read into the record in a later proceeding. The case is distinguishable since it did not involve a situation in which, as here, *none* of the witnesses appeared before the trier of fact. Moreover, *Smith* did not involve a client who refused to enter into a stipulation but, rather, a circumstance in which attorneys who were employed in the second proceeding contended that the stipulation was not binding upon them because it was made by the party's previous attorney. The witness whose testimony was involved died before the second trial and the opposing party, relying upon the stipulation, had failed to take his deposition.

that she knew the matter had been taken under submission by the judge, we cannot find her to have waived her objections or to be estopped to assert her claim because of failure to repeat her objections in the one-week period during which the trial judge had the matter under submission or during the period between judgment and the filing of points and authorities in support of a new trial motion. Indeed, it is difficult to contemplate how she could have done so. Moreover, plaintiff cannot be estopped to challenge the attorney's authority because defendant, in reliance upon the stipulation, consented to the continuation of a support order at the time the stipulation was made. If there was any detriment to defendant it must be viewed as *de minimis* since he was aware within six weeks after the stipulation, if not before, that plaintiff challenged its efficacy and he could have moved for an appropriate modification of the order.

The law as to substantive rights of a client was clearly stated long ago in *Knowlton* v. *Mackenzie* (1895) *supra,* 110 Cal. 183, 188: ''As a general rule, a stipulation of the attorney will be presumed to have been authorized by the client, as well in order to uphold the action of the court, as for the protection of the other party to the stipulation; but when the adverse party, as well as the court, is aware that the attorney is acting in direct opposition to his client's instructions or wishes, the reason of the rule ceases, and the court ought not to act upon the stipulation, nor can the adverse party claim the right to enforce a judgment rendered by reason thereof.''

We come, finally, to the question of whether plaintiff was prejudiced by the erroneous denial of her right to compel the decision to be rendered by a trier of fact who personally observed the demeanor of the parties and witnesses. Section 130 of the Civil Code provides that a divorce cannot be granted upon the uncorroborated statement of the parties. Defendant contends that, as the trial court found, the record does not contain sufficient corroboration of plaintiff's testimony as to the asserted acts of cruelty on defendant's part; thus the error could not have prejudiced plaintiff.

We cannot hold as a matter of law that the corroboration evidence was insufficient. The primary purpose of the requirement of corroboration is to prevent collusion. Where it is clear that there is no collusion between the spouses, only slight additional proof is required. (*Ruggles* v. *Ruggles* (1954) 43 Cal.2d 547, 548-549 [275 P.2d 42].) The trial court recognized this rule in its memorandum decision and declared

that there was no evidence of collusion here and, indeed, that the action was seriously contested.

 Plaintiff testified that defendant frequently threatened to leave her and that he left their residence on a number of occasions for varying periods of time with an unannounced destination. One of these incidents occurred on the date of their wedding anniversary when friends had been invited to their home for a celebration and he did not return to the home for approximately 10 days. According to the testimony of both parties, the marriage was stormy, with frequent episodes of physical and verbal abuse inflicted by both parties. A witness stated that she was a houseguest on frequent occasions when defendant was out of town, that his absences made plaintiff very unhappy and lonely. This witness conceded that she did not know why he was away from home but that she understood it was for business reasons. Plaintiff testified that defendant's absences were due to arguments, and defendant admitted that on at least some of these occasions his departure was due to marital difficulties. There is no indication in the record that any of the absences related by plaintiff were necessitated by defendant's work.

While the corroboration testimony is neither abundant nor strong, we cannot say that it was insufficient as a matter of law (cf. *Hellman* v. *Hellman* (1952) 108 Cal.App.2d 588, 590-591 [239 P.2d 458]), where, as here, only slight additional proof was needed because the parties were clearly not acting in collusion.

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan J., concurred.