[Civ. No. 2255. Fifth Dist. Nov. 4, 1975.]

CITY OF FRESNO, Plaintiff and Respondent, v.
ROXIE BABOIAN et al., Defendants and Appellants.

COUNSEL

Fullerton, Lang & Richert and Robert L. Patch II for Defendants and Appellants.

Spencer Thomas, Jr., City Attorney, James A. McKelvey, Chief Assistant City Attorney, A. Grant Macomber and Norton O. Nishioka, Assistant City Attorneys, John N. Kopsinis, A. H. Einbinder and Jose Alvarez, Deputy City Attorneys, for Plaintiff and Respondent.

OPINION

GINSBURG, J.*—This case is the unfortunate result of an attorney's misappropriation of funds intended for his clients.

In 1970 the respondent City of Fresno, plaintiff below, commenced an action against appellants for the purpose of acquiring 5 acres of their 20-acre parcel of land for purposes of constructing thereon a community center. James C. Janjigian was employed by appellants as their attorney of record in the action, and remained such until sometime after March 30, 1972. The written agreement under which Mr. Janjigian was employed clearly indicated that he had no authority to enter into any stipulations concerning the case without the prior consent of his clients; he also had been instructed by his clients that he was to endeavor to stop the condemnation action if possible, and, if that could not be done, then to endeavor to obtain a greater sum than was offered by the city as compensation. Neither the agreement nor the instructions ever were communicated to the representatives of respondent prior to the events hereinafter related.

On June 30, 1971, Attorney Janjigian entered into a written stipulation with the attorneys for respondent; the stipulation provided, in substance, that the city would have immediate possession of the five acres in question and that the sum of $15,000 would be paid, immediately, to Mr. Janjigian, as attorney and trustee for appellants, as a deposit. The pertinent portions of this stipulation are set forth in the margin.[1] This stipulation was executed by Attorney Janjigian without the knowledge or consent of his clients, and Mr. Janjigian signed it as "Attorney for

---

*Assigned by the Chairman of the Judicial Council.

[1]The stipulation provided, in part:

"2. That the plaintiff may have immediate possession of said property, but without depositing the presently estimated value thereof with the state or county treasurer; said

Defendants, Roxie Baboian, Harry J. Baboian, Ralph Baboian and Susie S. Hedges." The stipulation was signed by the judge and was ordered to be performed; in addition, a separate order entitled "Order for Withdrawal of Funds Pending Disposition of Case" was made on the same date. Thereafter, the sum of $15,000 was paid by check dated December 15, 1971, made payable to "JAMES C. JANJIGIAN, ATTY. and Trustee for Roxie, Harry & Ralph Baboian & S. Hedges." This check was received by Mr. Janjigian on December 17, 1971; thereafter, he endorsed and cashed the check and misappropriated the proceeds.

Respondent took possession of the property in issue on December 18, 1971. No objection to the city's taking of possession ever was made by appellants nor was any revocation of Mr. Janjigian's authority ever filed. Mr. Janjigian continued to represent appellants at least until March 30, 1972, when appellant Roxie Baboian signed a document entitled "Answer to Interrogatories" which was prepared by Mr. Janjigian, and served upon respondent. Sometime after that date and prior to the trial of the action, appellants' present counsel was substituted in place of Mr. Janjigian.

At the trial of the action, on July 13, 1973, the parties stipulated that the just compensation for the taking of the property was the sum of $20,000, and that all issues were resolved except the issue of whether the respondent City of Fresno should be granted a credit for the $15,000 paid to Mr. Janjigian pursuant to the earlier stipulation.

The trial court found respondent was entitled to this credit.[2]

immediate possession to be upon the terms and conditions of Code of Civil Procedure Sections 1243.5, 1243.6, and 1243.7 and a Court approval of this stipulation shall be deemed a Court order made pursuant to Section 1243.5(b).

"3. That the defendants Roxie Baboian, Harry J. Baboian, Ralph Baboian, and Susie S. Hedges may withdraw the entire $15,000 deposit made by the plaintiff on account of the taking of defendants' property pursuant to this stipulation pending the trial, settlement, or other disposition of this case between the parties, and the same to be paid over to and deposited with James C. Janjigian as attorney and trustee for said defendants. That immediately upon making of said deposit, plaintiff may have the use of said property.

"4. Except as may be provided in said code sections, the above stipulation is made without prejudice to the rights, duties, privileges, assertions, claims, defenses, or contentions of the parties in this action, and the deposit shall be applied on account of any sum determined to be owing to the defendants in any settlement or litigation hereinafter made."

[2]The exact finding of the court with regard to the payment of the amount in question was as follows: "The parties hereto (the defendants by JAMES C. JANJIGIAN, who was

■ Appellants now contend that the stipulation entered into by their former attorney, Mr. Janjigian, and respondent was beyond Mr. Janjigian's authority as attorney of record, that the city was negligent in its dealings with Mr. Janjigian, and that the respondent therefore should not be entitled to receive credit for the sum paid.

The rules delineating the extent of an attorney's authority are not altogether clear and concise. Statutorily, section 283 of the Code of Civil Procedure refers to the authority of an attorney.[3] Although subdivision 1 thereof is sometimes referred to as defining the extent of that authority (see, e.g., *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 276 [74 Cal.Rptr. 544, 449 P.2d 760]) it also has been held not to have enlarged or abridged the authority of an attorney, but only to have prescribed the manner of its exercise by requiring the filing of the attorney's agreement with the clerk or its entry upon the minutes. (*Preston* v. *Hill* (1875) 50 Cal. 43, 53; *Redsted* v. *Weiss* (1945) 71 Cal.App.2d 660, 663 [163 P.2d 105].)

■ There is a strong presumption that actions of an attorney are within the scope of his employment, absent a showing of the adverse party's knowledge of restrictions thereon. (*Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 460-461 [289 P.2d 446]; *Dale* v. *City Court of Merced* (1951) 105 Cal.App.2d 602, 606-607 [234 P.2d 110].) This presumption, however, is rebuttable. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, supra,* 45 Cal.2d at pp. 460-461.) Furthermore, the courts draw a distinction between actions which bind the client in procedural matters arising during the course of the action and those which impair the client's substantial rights or the cause of action itself. In *Linsk* v. *Linsk, supra,* 70 Cal.2d 272, 277, the court says: "The extent of an attorney's powers in this regard has been aptly described as follows: 'In retaining

their attorney) stipulated that upon the payment of $15,000.00 as provided in the stipulation, that the plaintiff could have possession of the property. Pursuant to said stipulation and pretrial order of the Court, said payment was made and possession of the property was taken effective December 18, 1971."

The court further stated as a conclusion of law: "The amount of $15,000.00 previously paid to defendants, by payment to their attorney, JAMES C. JANJIGIAN, on December 17, 1971, shall be applied to payment of the total compensation and subtracted therefrom."

[3]Section 283 of the Code of Civil Procedure reads as follows:

"An attorney and counselor shall have authority:

"1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise;

"2. To receive money claimed by his client in an action or proceeding during the pendency thereof, or after judgment, unless a revocation of his authority is filed, and upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment."

counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client.' [Citation.]"

■ It is clear that an attorney must be specifically authorized to settle and compromise a claim; merely on the basis of his employment, he has no implied authority to bind his client to a compromise settlement of pending litigation. (*Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698, 702, fn. 1 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828].) Even in this situation, the courts have employed doctrines of agency, including estoppel and ratification, where applicable, to validate the acts of the attorney. (*Navrides* v. *Zurich Ins. Co., supra,* 5 Cal.3d at p. 703; *Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 549 [99 Cal.Rptr. 367].)

■ Turning to the case at bench, we find it uncontradicted that the attorney did not have actual authority from his clients to enter into the stipulation in question. Since the stipulation did not involve the compromise of the entire lawsuit, we must next determine whether the attorney had ancillary or incidental authority to so bind his clients; this in turn depends upon whether the stipulation was merely a procedural step in the lawsuit or whether it involved the giving up of a substantial or essential right of appellants. The right of appellants given up by the stipulation was the immediate possession of the subject real property, which respondent, prior to judgment, otherwise would not have been entitled to take for the intended use as a community center. (See Code Civ. Proc., § 1243.4.) That possession of real property is a substantial right requires no citation of authority. We therefore find that in giving up this right Mr. Janjigian acted beyond the scope of both his actual and implied authority as an attorney.

However, after respondent took possession of the property, appellants took no action whatsoever, other than to claim, in this action, the funds which were paid to Mr. Janjigian pursuant to the stipulation.[4] In this

---

[4]We note that the taking of possession by respondent operated to give appellants notice of the claims of the respondent as possessor. (See *Jordan* v. *Warnke* (1962) 205 Cal.App.2d 621, 629 [23 Cal.Rptr. 300]; *Pacific Gas & Elec. Co.* v. *Minnette* (1953) 115 Cal.App.2d 698, 705 [252 P.2d 642].)

respect the case at bench bears a striking similarity to *Navrides* v. *Zurich Ins. Co., supra,* 5 Cal.3d 698.

In *Navrides,* the attorney negotiated a compromise of a personal injury claim over the specific objections of his client. He then represented to the insurance carrier that his client had approved the settlement, forged her name to a release, dismissed the pending suit, forged her name to a settlement draft and then misappropriated the proceeds. The client brought an action against the insurer for the amount of the settlement. The Supreme Court held that by bringing such an action the client ratified the settlement negotiated by the attorney, that since the settlement was ratified, the attorney had authority to receive the payment in money under subdivision 2 of section 283 of the Code of Civil Procedure (see fn. 3, *ante*), and that such payment to the attorney discharged the claim even though he absconded with the money. The court said at pages 703-704:

"It is well settled that a client may ratify the unauthorized actions of his attorney [citations]; . . . and that a principal may ratify the unauthorized act of an agent by bringing suit based thereon [citation].

". . . . . . . . . . . . . . . . . . . .

". . . [The client] must reckon with the elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it. [Citations.] The reason for the rule is obvious. Ratification is approval of a transaction that has already taken place. Accordingly the principal has the power to approve the transaction only as it in fact occurred, not to reconstruct it to suit his present needs. As the court said in [*Warshauer* v. *Bauer Construction Co.* (1960) 179 Cal.App.2d 44, 52 [3 Cal.Rptr. 570]], quoting from *Gift* v. *Ahrnke* (1951) 107 Cal.App.2d 614, 623 [237 P.2d 706], 'A principal "cannot split the agency transaction into separate parts, and take the benefits without the burden." ' In the instant case plaintiff, by ratifying Forsyth's settlement of her pending action for damages for personal injuries, necessarily ratified the entire transaction between Forsyth and Zurich, including Forsyth's receipt of the settlement draft." (Fn. omitted.)

The situation here is similar. Although their attorney had no authority to enter into a partial settlement which gave up a substantial right of

theirs, appellants never have objected to the giving up of this right and in fact have ratified it, both by failing to bring an action for possession and by stipulating in this action that the only issue was the credit for the money paid their former attorney.

Appellants' additional contention that respondent was negligent in failing to comply with provisions contained in sections 1243.5, 1243.6 and 1243.7 of the Code of Civil Procedure, as set forth in the stipulation (see fn. 1, *ante*), must likewise fail. These sections provide for the procedure to be used where the plaintiff is authorized by law to take immediate possession of the property sought to be condemned and makes a deposit of funds and an application for possession.[5] Although the stipulation sets forth that it is pursuant to these sections (see fn. 2, *ante*), obviously the provisions of the stipulation itself and the orders providing for immediate possession of the property by respondent and immediate withdrawal of the funds by appellants effectively eliminated the procedures prescribed in these sections, and this provision of the stipulation was mere surplusage.

Having found that the stipulation was ratified, we find that Mr. Janjigian had authority to receive the funds and to discharge appellants' claim *pro tanto*. ■ "An attorney has authority 'To receive money claimed by his client in an action or proceeding during the pendency thereof . . . and upon payment thereof, and not otherwise, to discharge the claim. . . .' (Code Civ. Proc., § 283, subd. 2.) This statute, enacted in 1872, codifies the well-established proposition of law that an attorney who has authority to settle or collect a claim also has authority to receive payment in money and that such payment to the attorney discharges the claim, even if the attorney absconds with the money. [Citations.]" (*Navrides* v. *Zurich Ins. Co., supra,* 5 Cal.3d 698, 705.)

---

[5] Sections 1243.5, 1243.6, and 1243.7 of the Code of Civil Procedure set forth the procedure for obtaining possession by a condemning agency prior to judgment in cases where immediate possession is authorized for reservoir or right-of-way purposes under section 1243.4 of the Code of Civil Procedure. An application to the court for immediate possession and a deposit of security in the probable amount of just compensation and damages are required, and notice must be given to the "record owner" at least 20 days before taking possession. Thereafter, the record owner may make an application for withdrawal of the deposit, accompanied by an affidavit setting forth his interest in the property. Twenty days' notice of the application's pendency must then be given to the condemning agency which, in turn, may file objections based upon the grounds that other persons may have interests in the property. After a determination of any such objections by the court, and after the filing of an undertaking by the record owner if required by the court, the court may order all or part of the deposit released to the record owner.

Since the stipulation, as ratified, was a valid agreement, appellants' former attorney had the authority to collect the funds in question, and the loss therefore must fall upon appellants who selected him as their agent.

The judgment is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.