[No. B126356. Second Dist., Div. Two. July 6, 1999.]

SCOTT ZIEGLER, Plaintiff and Appellant, v.
CITY OF SOUTH PASADENA et al., Defendants and Respondents.

**COUNSEL**

Diane Marchant for Plaintiff and Appellant.

Liebert, Cassidy & Frierson and Debra L. Bray for Defendants and Respondents.

**OPINION**

**NOTT, J.**—Scott Ziegler appeals from the trial court's denial of his petition for writ of mandate. The petition challenged Ziegler's discharge for misconduct from his position as a police officer with the South Pasadena Police Department (Department). Ziegler contends that the trial court's findings of fact are not supported by substantial evidence and that there is no just cause to discharge him.

### FACTUAL AND PROCEDURAL BACKGROUND

Ziegler was terminated from his position as a police officer on November 7, 1996. He appealed his termination. The City of South Pasadena (City) appointed an arbitrator to conduct a hearing and make advisory findings. The arbitrator recommended reinstatement. The city manager then reviewed the record and rendered a final decision, upholding Ziegler's termination.

Ziegler filed a petition for writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure. The trial court independently reviewed the

administrative record and found that it fully supported the city manager's findings and that the city manager did not abuse his discretion in terminating Ziegler. It found that there was no legal prohibition to the City's terminating Ziegler for the same misconduct which supported his previous release from probation.

The evidence contained in the administrative record, viewed in the light most favorable to the findings of the trial court (see *Kazensky* v. *City of Merced* (1998) 65 Cal.App.4th 44, 51-54 [76 Cal.Rptr.2d 356]), shows the following. On September 8, 1995, Ziegler, who had been drinking, was driving his white Camaro on his way to buy beer when the car lost traction and slid into a curb. He was traveling at approximately 50 miles per hour in a 35-mile-per-hour zone at the time. The incident set off the alarm of a Honda parked at the curb. Officer Litterini, who was sitting next to Ziegler at the time, felt a bump and heard the Honda's alarm, but told Ziegler that there was no damage and they should "get out of [t]here." An eyewitness, Eric Meek, testified that he saw Ziegler's Camaro strike the Honda. Ziegler drove away without getting out of the Camaro to check the Honda for damage. Meek followed the Camaro, took down its license plate number, and reported the incident to the police. Ziegler and Officer Litterini stopped in a parking lot, but thought they might be followed and drove home. They checked the Camaro's bumper for damage, but found none.

Sergeant Michael Neff went to Ziegler's home to question him about the hit-and-run the day of the incident. Ziegler told Sergeant Neff that he had not been driving the Camaro and that it had been inoperable at the time of the accident. Sergeant Neff went to the scene of the accident where he inspected the Honda and observed rubber marks and a scrape on the bumper.[1] He returned to Ziegler's home. Ziegler had changed his shirt. Ziegler first said that if someone reported seeing the Camaro, they must have a grudge against his in-laws who owned the vehicle. Sergeant Neff informed Ziegler that he would be subject to an internal investigation. Another officer, Bill Earley, privately encouraged Ziegler to tell the truth. Ziegler then admitted that he had been driving the Camaro.

Ziegler went with Sergeant Neff to the police station, where a formal interview was conducted. Ziegler admitted driving, but stated that he did not know that he had hit a vehicle. A report of the investigation was prepared, and Captain Michael Ward determined that Ziegler should receive a nondisciplinary release from his probationary appointment for failure to meet the standards of probation. No reasons for the release were entered into the personnel record. Ziegler was released on September 12, 1995.

---

[1] The traffic accident narrative states that the investigating officer observed white paint transfer on the rear bumper of the Honda.

After some officers in the Department requested reconsideration of the decision to release Ziegler, Ziegler told Chief Thomas Mahoney that he did not believe that he had been involved in a traffic accident, but thought he had hit the curb. Chief Mahoney told Ziegler to speak to the two captains and, if they both agreed to bring him back, he might be reinstated. One captain supported reinstatement and the second, Captain Ward, said he would not participate in the reinstatement process but would support any decision the others made. Mahoney recommended that Ziegler be reinstated.

The city manager approved the reinstatement upon condition that Ziegler be identified as the driver in the accident report, that the owner of the Honda be contacted and restitution be made, that the Department obtain assurance that the incident was a misdemeanor, that Ziegler lose all of his accumulated vacation and sick leave, essentially starting as a new employee, that his probation be extended six months, and that his time off without pay be considered his punishment. Ziegler was reinstated on September 28, 1995.

In August 1996, Captain Ward discovered that the traffic accident report had not been completed and had not been submitted to the district attorney. He assigned an officer to complete the traffic incident report to show Ziegler as the driver and to submit it to the district attorney's office. The district attorney's office filed criminal charges against Ziegler for hit-and-run and for dishonesty to a police officer. Chief Mahoney left the Department on medical leave on August 8, 1996.

Acting Chief Ward placed Ziegler on paid administrative leave pending resolution of the criminal charges on August 27, 1996. The Department issued a notice of intent to terminate. Ziegler pleaded nolo contendere to the hit-and-run and the dishonesty charge was dismissed. The district attorney's office informed the Department that it would have difficulty ever using Ziegler as a police witness because of the charges against him, the publicity surrounding the charges, and their resolution.

John Anderson took over as interim police chief on October 26, 1996. After predisciplinary proceedings, Interim Police Chief Anderson discharged Ziegler from his employment on November 7, 1996.

DISCUSSION

I. *Substantial Evidence*

In reviewing a decision under section 1094.5 of the Code of Civil Procedure, we review the trial court's findings of fact for substantial evidence in the administrative record, and review the administrative agency's

penalty decision for abuse of discretion. (See *Kazensky* v. *City of Merced*, *supra*, 65 Cal.App.4th at pp. 51-54.)[2] ▓ The trial court found, based upon an independent review of the administrative record, that the record fully supports the findings of the city manager and that the city manager did not abuse his discretion in deciding to terminate Ziegler. In particular, and without limiting its holding regarding the city manager's findings, the court found "that on or about September 8, 1995, [Ziegler] was involved in a hit and run accident after having been drinking. Further, the weight of the evidence supports the findings that [Ziegler] subsequently lied about his involvement in the hit and run."

Substantial evidence shows the following. Ziegler, who had been drinking, lost control of the Camaro he was driving and struck a parked Honda. Ziegler then left the accident scene without contacting the Honda's owner or leaving appropriate information. Officer Litterini, sitting in the front seat next to Ziegler, felt a bump and heard the alarm go off on the Honda. The officer who investigated the hit-and-run observed white paint transfer consistent with the Camaro's paint on the Honda's bumper. An eyewitness, Eric Meek, saw the Camaro strike the Honda. Although the arbitrator who visited the scene concluded that Meek's view of the vehicles was obstructed, the city manager subsequently inspected the scene and concluded that Meek could have seen the collision.

Substantial evidence also supports the finding that Ziegler lied about his involvement with the hit-and-run. First, Ziegler told Sergeant Neff on the day of the incident that he had not been driving the Camaro and that it had not even been operable at the time. When Sergeant Neff returned, Ziegler told him that someone was trying to get back at his in-laws. After being informed that an eyewitness had reported the license plate number and encouraged to tell the truth, Ziegler admitted that he was driving and lost control of the Camaro.

Ziegler continued to assert, however, throughout the internal affairs investigation and his rehiring, that at the time of the accident he did not believe that he had hit the Honda. The truthfulness of this assertion was undermined by the facts that Officer Litterini, sitting next to him in the Camaro, thought the Camaro had bumped the Honda and that Ziegler subsequently took steps to cover up his involvement in the incident. In addition, Officers Earley, Mesch, and Sandoval reported that they remembered or thought they remembered that around the time of the incident Ziegler had told them that he thought he may have hit the Honda.

---

[2]At oral argument in this appeal, counsel for Ziegler conceded that the evidence is sufficient to support termination, had it occurred at the time he was released from probation in September 1995.

Ziegler asserts that the city manager's findings that Ziegler lied to the chief of police and under oath at the administrative hearing regarding Ziegler's belief that he had not hit the Honda, are not supported by substantial evidence. As noted above, however, there was evidence from which the city manager and the trial court could conclude that Ziegler was not credible when he stated that he did not believe at the time of the incident that he had hit the Honda.

Ziegler asserts that the city manager relied upon Ziegler's making misrepresentations to the city manager in 1995, in order to get his job back, and that there is no substantial evidence that Ziegler lied to the city manager. The city manager's report does not make such a finding. It does state that Ziegler "obtained reinstatement through further lies, which he has continued up through his testimony under oath at the Arbitration Hearing." That reference is presumably to Ziegler's statements to the chief of police and others regarding whether he knew he had hit the Honda. The report then states that the city manager agreed to reinstate Ziegler "based upon certain representations which were not true." The report lists the representations, conditions to Ziegler's reinstatement, and states that the conditions did not occur. It does not state that Ziegler made the representations to the city manager.

## II. *Abuse of discretion*

Ziegler has not shown that his termination constituted an abuse of discretion. An appellate court is not free to substitute its discretion for that of the administrative agency where reasonable minds may differ with regard to the appropriate disciplinary action. (See *County of Los Angeles* v. *Civil Service Com.* (1995) 39 Cal.App.4th 620, 634 [46 Cal.Rptr.2d 256].) Ziegler was engaged in criminal conduct when he fled the scene of the accident. He also lied during the investigation of the hit-and-run. Such conduct shows a lack of credibility and honesty, a breach of trust, and extremely poor judgment. It justifies termination. (See *Ackerman* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 395, 400 [193 Cal.Rptr. 190].)

Ziegler's position that because he had previously been released from probation based upon the hit-and-run incident, he could not subsequently be terminated for the same conduct, lacks merit. The constitutional concept of double jeopardy does not apply to employment decisions. (See *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 222 [246 Cal.Rptr. 733, 753 P.2d 689] [license revocation proceeding]; *Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1060, fn. 6 [275 Cal.Rptr. 594] [employment termination].) Ziegler bases his claim on the notions of good

faith and just cause, and cites to arbitration decisions, including his own, in which the arbitrator found that fundamental notions of fairness preclude punishing an employee twice for the same wrongdoing. Although we agree that the City might have justifiably decided the matter differently based upon notions of good faith and just cause, we do not believe it was required to adopt the principle advocated by Ziegler. Under the facts presented, the Department was free to determine that the earlier employment action had been too lenient.

The termination was based upon additional elements which were not present at the time Ziegler was released from probation. At the time Ziegler was rehired, the conditions imposed by the city manager in authorizing the reinstatement were not met. The unmet conditions included that Ziegler was to be identified in the police report as the driver of the vehicle, that the Department was to submit the case to the district attorney to assure that the offense was a misdemeanor, and that Ziegler was to make restitution. In addition, at the time Ziegler was released from probation he had not yet been convicted of misdemeanor hit-and-run by plea of no contest. ■ A plea of no contest to a misdemeanor is unavailable for use as an admission in a subsequent administrative proceeding. (See *County of Los Angeles* v. *Civil Service Com.*, *supra*, 39 Cal.App.4th at p. 627.) ■ In the present case, it was not so used. Evidence was instead presented on the underlying crimes. Nevertheless, the City could consider the impact which the conviction and the publicity surrounding it would have on Ziegler's ability to testify credibly in court as a police officer.

### DISPOSITION

The judgment appealed from is affirmed.

Boren, P. J., and Zebrowski, J., concurred.

A petition for a rehearing was denied July 27, 1999, and appellant's petition for review by the Supreme Court was denied October 6, 1999.