[No. C053225. Third Dist. Sept. 6, 2007.]

STEVEN P. KNABE, Plaintiff and Appellant, v.
RICQUE LYNN BRISTER, Defendant and Respondent.

## COUNSEL

Rich, Fuidge, Morris & Lane and David R. Lane for Plaintiff and Appellant.

McKernan, Lanam, Bakke & Williams and Randy L. Bakke for Defendant and Respondent.

## OPINION

**NICHOLSON, J.**—In this appeal, we conclude that a stipulation signed by the parties' attorneys agreeing to transfer exclusive jurisdiction over a child support order from Texas to California is valid and enforceable even though it was not signed by the litigating parties themselves.

### LEGAL BACKGROUND

This case involves the Uniform Interstate Family Support Act (UIFSA), an act adopted by both Texas and California. (Tex. Fam. Code, § 159.001 et seq.; Cal. Fam. Code, § 4900 et seq.)[1,2] UIFSA was designed to ensure that only one state at a time would have jurisdiction to make and modify a child support order. "[T]he central jurisdictional feature of UIFSA is the concept of continuing, exclusive jurisdiction. Under UIFSA, a court that makes a valid child support order retains exclusive jurisdiction to modify the order as long as the requirements for continuing, exclusive jurisdiction remain fulfilled. The court of another state may enforce a child support order registered in that state, but may not modify it unless the decree state has lost its continuing, exclusive jurisdiction." (4 Kirkland et al., Cal. Family Law Practice and Procedure (2d ed. 2007) § 151.51[1], p. 151-30 (rel. 53-5/2007), fn. omitted; see also *Stone v. Davis* (2007) 148 Cal.App.4th 596, 600 [55 Cal.Rptr.3d 833].)

---

[1] All undesignated section references are to the California Family Code.

[2] California currently operates under the 1996 version of UIFSA, while Texas uses the 2001 version. (9 pt. IB West's U. Laws Ann. (2005) U. Interstate Fam. Support Act, pp. 159, 281.) California has adopted the 2001 version, but the Legislature conditioned its effectiveness on events that have yet to occur. (*Id.* at p. 166.) The differences in the relevant portions of the two versions do not affect our decision.

Under UIFSA, after a support order issued by another state has been registered in California, a California court may modify that order when, among other instances, one of the parties resides in the issuing state and all of the parties file a written consent in the issuing state court authorizing California to assume continuing, exclusive jurisdiction. The relevant statute as currently adopted in California, section 4960, reads in relevant part:

"(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if Section 4962 does not apply [(concerns when all of the parties reside in California)] and after notice and hearing it finds that: [¶] . . . [¶]

"(2) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order." (§ 4960, subd. (a)(2).)[3]

The parties cite us to no published case, and we are aware of none, that determines whether a written consent under section 4960 must be signed by the actual parties or whether it can be signed by the parties' attorneys.

## FACTS

In 2000, plaintiff Steven P. Knabe and defendant Ricque Lynn Brister lived in Texas. That year, the Texas District Court declared that Knabe was the father of a child born to Brister. The court awarded physical custody of the child to Brister, established Knabe's visitation rights, and ordered Knabe to pay child support.

Shortly after the Texas court entered its order, Brister and the child moved to Chico, California. Knabe continues to reside in Texas. In July 2001, Knabe registered the Texas court order with the Butte County Superior Court.

On September 19, 2001, Brister petitioned the California court to modify the Texas order by granting her sole custody and restricting Knabe's visitation rights. Knabe initially opposed the petition by arguing that California lacked jurisdiction to modify the Texas order. He submitted copies of motions

---

[3] Under the 2001 UIFSA, the parallel provision adopted by Texas allows Texas courts to modify an out-of-state support order when the Texas court, along with the other requirements mentioned above, determines that " 'all of the parties who are individuals have filed in a record in the issuing tribunal consents for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.' " (9 pt. IB West's U. Laws Ann., *supra*, U. Interstate Fam. Support Act, p. 259.)

to modify and enforce the Texas order he had filed in the Texas court on September 7, 2001. He claimed Brister had also filed a motion in the Texas court to transfer venue. He declared the Texas court had refused to transfer venue.

However, on December 5, 2001, attorneys for both Knabe and Brister executed and filed with the Butte County Superior Court a stipulation purporting to transfer jurisdiction of this matter from Texas to California. The 2001 stipulation reads in full:

"The Petitioner, Steven P. Knabe, by and through his attorney, M. Melanie Howell, and the Respondent, Ricque Brister, by and through her attorney, Randy L. Bakke, hereby stipulate as follows:

"1. That the California courts shall have jurisdiction over this matter for all purposes including, but not limited to, jurisdiction to modify the [Texas court order], and to make such orders as the court deems appropriate concerning custody, visitation and support of the minor child who is the subject of [the Texas] action; and

"2. The Petitioner, Steven P. Knabe, hereby submits to the personal jurisdiction of the California courts."

The stipulation is signed by the parties' respective attorneys. It is not signed by the parties themselves.

From this point, Knabe opposed Brister's petition to modify visitation on the merits. He did not challenge the California court's jurisdiction. Indeed, he asked the California court to grant him primary physical custody. Ultimately, the California court issued an order affecting visitation.

A few years passed. In March 2005, Brister filed a motion with the Butte County Superior Court seeking to modify the Texas court order's provisions on child support.

In response, Knabe filed a motion to set aside the 2001 stipulation to the extent it transferred jurisdiction over child support issues from Texas to California. Knabe declared that he never authorized his attorney in 2001 to

consent to California jurisdiction over child support. He declared he had authorized his counsel to stipulate to California jurisdiction only for the issues of custody and visitation. He stated he never saw a copy of the stipulation until 2005. He also argued the stipulation was not enforceable because a settlement regarding a substantial right must be signed by the parties themselves.

Brister argued the 2001 stipulation granted California continuing, exclusive jurisdiction over all matters contained in the Texas order, including child support. She introduced evidence showing the California court had forwarded the 2001 stipulation to the Texas court just days after the stipulation had been executed, and the Texas court had filed the stipulation. The Texas court had stamped the California judge's cover letter as filed, and that letter referenced the enclosed stipulation.

In response, Knabe submitted evidence showing the Texas court's file on this matter contained no order transferring jurisdiction to California. The 2001 stipulation was filed in the case file's general correspondence section, but it was not noted on the docket sheet.

The Butte County court denied Knabe's motion to set aside the stipulation: "The Court finds that [Knabe's] attorney had authority, as part of the general authority of any retained counsel, to submit [Knabe] to the jurisdiction of this Court for purposes of child support and that such stipulation did not affect an essential right of [Knabe]." The court determined the stipulation was on file in the Texas court, and that it satisfied the requirements of section 4960 as a written consent by all of the parties agreeing to California assuming and exercising continuing, exclusive jurisdiction over the issue of child support in this matter.

## DISCUSSION

Knabe appeals from the trial court's order. He claims the 2001 stipulation consenting to California jurisdiction over the Texas child support order is invalid because (1) it involves a substantial legal right and was required to be signed by the actual parties; (2) he did not give his attorney authority to consent to transferring jurisdiction over the child support order; and (3) it does not comply with the requirements of Code of Civil Procedure section

664.6. In the absence of a valid stipulation, he also argues that California lacks sufficient minimum contacts to have personal jurisdiction over him.

Our resolution of Knabe's first argument disposes his remaining arguments.

I

*Substantial Legal Right*

Knabe argues the 2001 stipulation did not satisfy the requirements of section 4960. He claims the statute's requirement that all of the "parties" file written consents in the issuing tribunal to California's jurisdiction must be read to require the consents be signed by the party litigants. This, he says, is because consenting to another state's jurisdiction over a child support order involves a substantial right to which his attorney could not stipulate without his consent. We disagree.

■ The word "parties" is susceptible to more than one interpretation. Depending upon the statutory context in which it is used, the word can mean the litigant and the litigant's attorney, or it can mean only the specific person by or against whom legal proceedings are brought. (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 582–583 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*).) To determine which meaning applies, we review the legislation's subject to ascertain the Legislature's intent. If the subject of the statute "affect[s] the substantial rights of the litigants themselves, the term 'party' literally means the party litigant, not the litigant's attorney." (*Id.* at p. 583.) If the subject does not affect the litigant's substantial rights, then the term may include the litigant's attorney.

This question necessarily invokes the more general issue of an attorney's authority to bind his or her client by agreement or stipulation. " '[T]he client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client.' [Citations.]" (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645] (*Blanton*).) However, an attorney is not authorized merely by virtue of his retention in litigation to "impair the client's substantial rights or the cause of action itself." (*Linsk v. Linsk* (1969) 70 Cal.2d 272, 276 [74 Cal.Rptr. 544, 449 P.2d 760] (*Linsk*).)

The Supreme Court has not expressly defined what a substantial right is, but it has provided examples. The right to settle a case is a substantial right, and a written stipulation to settle a case and enter judgment pursuant to Code of Civil Procedure section 664.6 must be signed by the party litigant. (*Levy, supra*, 10 Cal.4th at pp. 582–584.)

"Similarly, an attorney may not 'stipulate to a matter which would eliminate an essential defense [citation]. He may not agree to the entry of a default judgment [citation], may not . . . stipulate that only nominal damages may be awarded [citation] and he cannot agree to an increase in the amount of the judgment against his client. [Citation.] Likewise, an attorney is without authority to waive findings so that no appeal can be made . . . .' [Citations.]" (*Blanton, supra*, 38 Cal.3d at pp. 404–405.)

An attorney has no authority to stipulate over his or her client's objection that the case be submitted to binding arbitration. (*Blanton, supra*, 38 Cal.3d at p. 408.) He or she also has no authority to stipulate over his or her client's objection that, after a mistrial due to the trial judge's disability, the case could be decided by a different judge entirely on the basis of the previous record. (*Linsk, supra*, 70 Cal.2d at pp. 278–279.)

■ An attorney who takes these types of acts without his or her client's consent "impairs so substantial a portion of the case or so fundamental a right of the client that it justifies setting aside a stipulation at the expense of an opposing party with no knowledge and/or reason to know of the lawyer's lack of authority." (*In re Marriage of Helsel* (1988) 198 Cal.App.3d 332, 337 [243 Cal.Rptr. 657], fn. omitted (*Helsel*).)

On the other hand, " '[t]he attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action . . . . "In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client." [Citation.]' [Citation.]" (*Blanton, supra*, 38 Cal.3d at pp. 403–404.)

In these types of procedural or tactical matters, an attorney "must be able to make such tactical decisions as whether to call a particular witness, and the court and opposing counsel must be able to rely upon the decisions he makes, even when the client voices opposition in open court. [Citation.] In such

tactical matters, it may be said that the attorney's authority is implied in law, as a necessary incident to the function he is engaged to perform." (*Blanton, supra*, 38 Cal.3d at p. 404.)

In the context of family law, however, simply announcing whether a written stipulation is substantive or procedural to determine whether it must be signed by the party litigant does not account for the complex and ongoing relationship between the parties and the matters they seek to resolve. "When a lawyer agrees to settle the typical civil case, the case ends as far as the client is concerned. In the typical family law case, however, quite the opposite is true. Frequently at least some issues in family law cases are resolved by way of a stipulation between the parties. . . . [M]ost parties can agree on certain matters but leave other matters to be resolved by the court. In the family law context, a stipulation in a given case may be tantamount to settling the entire dispute or may represent merely the flea on the back of the elephant. For example, many stipulations agreeing to dispose of certain issues in a family law case have less an impact on the client's 'substantial rights' than the lawyer's 'selection of issues to be pursued and the abandonment of those deemed . . . to be untenable . . .' [citations].

"Thus in family law cases where the court is confronted with a motion to set aside a stipulation which disposes of some of the issues in a case on the ground that the lawyer for one of the parties was not authorized to enter into the stipulation, [the court] must determine whether issues disposed of, individually or together, were central to the controversy. If the dispute is substantially resolved by virtue of the stipulation, it is tantamount to the settlement and dismissal of the typical civil case which, under *Blanton*, cannot stand if the client can demonstrate a lack of authorization. On the other hand, if the substantial portion of the case remains to be litigated, the stipulation represents largely a winnowing of the issues so that the dispute is focused for trial. Under such circumstances, we do not believe the system is best served—especially in the often emotionally charged family law environs—if clients may routinely set aside stipulations entered into by their lawyers as to matters which are insubstantial and collateral to the heart of the dispute. In making such a determination, the court may compare the extent to which the stipulation differs from resolution argued by the client to be justified by the facts. The court may also evaluate the economic value of the stipulation, both in absolute terms and in relation to the total value of the disputed issues in the case." (*Helsel, supra*, 198 Cal.App.3d at pp. 339–340.)

Here, the 2001 stipulation executed by the parties' attorneys did not touch the heart of the dispute. The stipulation did not resolve Brister's motion to amend the child support order, nor did it impact Knabe's ability to litigate the

motion on its merits. Indeed, the stipulation did not narrow any of the issues to be resolved on the merits of the motion. Entering the stipulation thus was similar to the tactical and procedural decisions all attorneys have the power to make that are necessary and incidental to their management of the action.

Obviously, the 2001 stipulation consenting to California jurisdiction is a more significant procedural matter than simply agreeing to continue a motion hearing to a new date. But it is not as significant as the types of actions listed in *Blanton*, such as settling a cause of action, agreeing to submit the case to binding arbitration, and consenting to waive an appeal, where the party actually loses rights attached to the merits of his or her action. Knabe maintains all of his defenses to the merits of the motion, all of which will be decided in a court of law, and he will have a right to appeal any adverse decision.

UIFSA's subject and purpose do not disclose an intent by the Legislature to ensure written consents be signed only by the party litigants. Section 4960 was not designed simply to ensure Knabe had a right to have the support order modified in Texas; it was designed to ensure that only one state would have continuing, exclusive jurisdiction to modify the order. "Under [prior law], the majority of support proceedings were de novo. Even when an existing order of one state was 'registered' in a second state, the registering state often asserted the right to modify the registered order. This meant that multiple support orders could be in effect in several states. Under UIFSA, the principle of continuing, exclusive jurisdiction aims, so far as possible, to recognize that only one valid support order may be effective at any one time. [¶] . . . [¶]

"Except for narrowly defined fact circumstances, under UIFSA the only tribunal that can modify a support order is the one having continuing, exclusive jurisdiction over the order. But, if the parties no longer reside in the issuing state, or if they agree in writing that another tribunal may assume modification jurisdiction, a tribunal with personal jurisdiction over the parties, has jurisdiction to modify [citations]." (9 pt. IB West's U. Laws Ann., *supra*, U. Interstate Fam. Support Act, prefatory note, pts. IIB3 & IID2, pp. 287, 288.) The act's purpose can be satisfied whether the writing is signed by the party litigants or by their attorneys.

The statute's reference to "parties who are individuals" does not compel a different interpretation. (§ 4960, subd. (a)(2).) The reference to "individuals" denies support enforcement agencies, which may seek to modify a support order, the power to transfer continuing, exclusive jurisdiction to another state. (See, e.g., § 4958.)

Another factor supporting our decision is Knabe's apparent ratification of the 2001 stipulation. Prior to the stipulation's filing, Knabe opposed Brister's

petition to modify custody and visitation on jurisdictional grounds. Afterward, he opposed the motion on its merits, no longer contesting California's jurisdiction over the Texas court order. Thus, even if Knabe had not authorized the stipulation and, as he claims, never saw the stipulation in writing, his actions established his ratification of it. He consented to California jurisdiction over the Texas order.

■ For these reasons, we conclude the 2001 stipulation signed by the parties' attorneys and filed with the Texas court satisfied section 4960's requirement for a written consent by all of the parties. Making the stipulation was within the apparent authority of Knabe's attorney.

## II

### *Knabe's Remaining Arguments*

Our conclusion that the 2001 stipulation is enforceable disposes of Knabe's remaining arguments.

Knabe claims he did not give his attorney authority to consent to California assuming jurisdiction over the child support order. This, even if so, does not affect our determination that the stipulation is enforceable as within the attorney's apparent authority and as not affecting a substantial right.

At oral argument, Knabe claimed the stipulation was invalid because it had not been "filed" in the Texas court by "the parties." (§ 4960, subd. (a)(2).) This argument elevates form over substance. Under questioning, Knabe's attorney admitted the stipulation and its cover letter written by the California court were filed with the Texas court. He also admitted the stipulation was signed by the parties' attorneys. The Texas court, having received and filed the stipulation, was required to do nothing more.

Knabe argues the stipulation is unenforceable under Code of Civil Procedure section 664.6. That statute requires the parties themselves to agree in writing or on the court record to a settlement that can then be entered and enforced as the judgment of the court. It does not apply here. The stipulation is not a settlement agreement on which judgment can be entered.

Finally, Knabe asserts California lacks minimal contacts with him to have personal jurisdiction over him. In the stipulation, however, Knabe expressly consented to California having personal jurisdiction over him. Knabe does not contest the validity of this provision in the stipulation.

## DISPOSITION

The order of the trial court denying Knabe's motion to strike the 2001 stipulation is affirmed. Costs on appeal are awarded to Brister. (Cal. Rules of Court, rule 8.276(a).)

Scotland, P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 28, 2007, S157218. Kennard, J., was of the opinion that the petition should be granted.