[No. E051039. Fourth Dist., Div. Two. June 30, 2011.]

THOMAS FERGUSON, Plaintiff and Appellant, v.
CITY OF CATHEDRAL CITY, Defendant and Respondent.

COUNSEL

Lackie Dammeier & McGill, Michael A. Morguess and Michael A. McGill for Plaintiff and Appellant.

Liebert Cassidy Whitmore, J. Scott Tiedemann and Damon M. Brown for Defendant and Respondent.

OPINION

**CODRINGTON, J.—**

I

INTRODUCTION

In 2007, the City of Cathedral City (the City) terminated the employment of a police officer, Thomas Ferguson (Ferguson), after he had been arrested in 2006 for soliciting a prostitute and charged with violating Penal Code section 647, subdivision (b).

Ferguson appeals from a judgment denying his petition for writ of mandate (Code Civ. Proc., §§ 1085, 1094.5) in which he sought to reverse the termination of his employment.

The issue on appeal concerns the validity and enforceability of a settlement agreement between Ferguson and the City. We conclude that Ferguson repudiated the agreement and the City properly elected to treat the repudiation as a breach of the agreement, entitling the City to reinstate Ferguson's discharge.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Ferguson's Arrest and Plea*

Ferguson's employment with the Cathedral City Police Department (the Department) began in 2001. In November 2006, Ferguson was arrested during a videotaped sting operation conducted in the City of Ontario after Ferguson agreed to pay an undercover police officer $40 for oral sex. On November 16, 2006, Ferguson exited the I-10 freeway at Holt Boulevard in Ontario and parked near a woman he had seen standing on the street. An undercover officer, Kathy Janzen (Janzen), was posing as a prostitute. Ferguson motioned to Janzen and she approached his car. Ferguson asked Janzen if she was a cop. Janzen said she was a "working girl" who charged $40 for a "blow job" and $80 for sex. Ferguson said, "I'll take the $40 blow job." Janzen directed Ferguson to meet her down the street. A uniformed police officer stopped Ferguson and arrested him for solicitation for prostitution.

Ultimately, on March 5, 2008, Ferguson pleaded no contest to Penal Code section 415, subdivision (2), a misdemeanor, for making loud and unreasonable noise. Ferguson was fined about $500 and sentenced to two years of summary probation.

### B. *Ferguson's Discharge*

In December 2006, the Department served Ferguson with a notice of intent to discharge him. Ferguson attended a *Skelly*[1] hearing conducted by the chief of police, Stanley E. Henry. At the hearing, Ferguson and the City reached a separation agreement and general release of claims by which Ferguson agreed to serve a 160-hour suspension for "conduct unbecoming a police officer" and to waive his right to assert an administrative appeal in exchange for the City agreeing to rescind his discharge.

The separation agreement included a provision that, if Ferguson was convicted at trial or by a plea of guilty or nolo contendre for violating certain

[1] *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] (*Skelly*).

enumerated Penal Code sections, or any offense limiting his ability to possess a firearm, he agreed he would resign and not seek reemployment. Further, Ferguson agreed that "if criminal charges are filed in connection with his arrest by the Ontario Police Department, he shall take all reasonable steps to bring the criminal proceedings to an expeditious conclusion."

Ferguson served his 160-day suspension and returned to work. On June 18, 2007, he was injured while on duty and placed on temporary disability. During this time, the criminal charges were still pending.

On June 23, 2007, Ferguson's first lawyer, Robin L. Sergi (Sergi), wrote a letter to Chief Henry, stating, "[I]t has come to our attention that on more than one occasion management personnel from the Cathedral City Police Department has been in contact with the San Bernardino District Attorney's office. This certainly gives the appearance that there was and has been an attempt to influence the DA's decision as to how the office would prosecute this case if at all. . . . [¶] Due to the departments [sic] efforts to undermine [Ferguson's] agreement he now considers the agreement including the condition that he resign in the event he is convicted of or pleads guilty to any related offense null and void." The letter continued, asserting that Ferguson's "punishment for his conduct has been determined and he has fulfilled that suspension. Any further punishment . . . will be without just cause and a violation of his rights."

On July 11, 2007, the City's attorney, J. Scott Tiedemann (Tiedemann), wrote back, denying there had been any improper contact between the Department and the office of the district attorney. Instead, the letter explained the Department had only made inquiries about the status of Ferguson's case. The letter continued, stating, "the City accepts your repudiation of the Agreement and a notice of intent to terminate is being served on your client. . . . [S]ince the Department is not bound by the Agreement it is free to decide that a suspension was not adequate. . . . [¶] Accordingly, the 30 day suspension is withdrawn and disciplinary proceedings are being recommenced."

In the meantime, on July 10, 2007, the Department personally served Ferguson with a second notice of intent to discharge, citing Sergi's assertion that the separation agreement was null and void. A second *Skelly* hearing was scheduled for July 19, 2007, at 3:30 p.m.

On July 17, 2007, Ferguson's new lawyer, Julio A. Jaramillo (Jaramillo), wrote the Department, expressing the position that the separation agreement was *not* null and void. Jaramillo characterized Ferguson's former lawyer's statements as an anticipatory repudiation of the separation agreement that

never became effective. Ferguson also demanded a new *Skelly* hearing. In a companion letter, Jaramillo objected to scheduling the *Skelly* hearing for 3:30 p.m. on July 19, 2007, in Cathedral City in Riverside County because Ferguson was living in the City of Cypress in Orange County, an estimated four-hour drive. Ferguson claimed that, due to medical restrictions imposed on him because of his IOD (injured on duty) status, he was unable to travel for an extended period of time. Additionally, Jaramillo asserted that he had a prior commitment at 4:00 p.m. in Orange County which would prevent him from representing Ferguson on July 19, 2007.

Tiedemann estimated that the actual drive between the two locations was one and a half hours and proposed that Ferguson could take breaks as needed to complete the drive.[2] Furthermore, the City had tried to accommodate Ferguson because his attorney had scheduled two interviews at 11:30 a.m. and 12:15 p.m. in Cathedral City on the same day as the proposed *Skelly* hearing. Tiedemann concluded by stating that the interviews and hearing would proceed as scheduled and Ferguson's failure "to attend the scheduled interviews will be deemed insubordination by the Department."

Apparently, after further communications, it was agreed to conduct the two interviews at the Cypress Police Department. The *Skelly* hearing was rescheduled to July 25, 2007, in Cathedral City. But Ferguson again objected to traveling to that location. The City responded that, in view of Ferguson's refusal to cooperate, Chief Henry would be serving a notice of discharge immediately. The notice of discharge was served, effective July 26, 2007.

C. *The City Manager's Decision Rejecting the Hearing Officer's Recommendations*

After Ferguson appealed his termination, a hearing officer conducted a three-day administrative hearing in October and December 2008. The hearing officer issued a recommendation that the separation agreement should not be enforced, that Ferguson should serve an additional 160 hours of suspension, and that his employment should be reinstated subject to the resolution of his temporary disability.

The city manager issued a final administrative decision in which he agreed the separation agreement should not be enforced but he disagreed with the recommendation that Ferguson be reinstated after serving an additional 160 hours of suspension. Instead, the city manager upheld Ferguson's discharge.

---

[2] MapQuest estimates the distance between the two locations is about 107 miles and the driving time about one hour 54 minutes.

### D.   *The Petition for Writ of Mandate*

In his writ petition, Ferguson alleged the following. After Ferguson was arrested for violating Penal Code section 647, subdivision (b), the Department served him with an intent to discharge notice. After the parties executed the separation agreement, the City ignored its obligations under the agreement by deciding to terminate Ferguson in violation of the agreement. Chief Henry issued the second intent to discharge notice and discharged Ferguson without a *Skelly* hearing. Ferguson further alleged he did not breach the agreement. Instead, the City breached the agreement when it discharged him.

Ferguson asked for declaratory relief in the form of a declaration that the City's "action in failing to adhere to the Agreement constitutes a breach of that Agreement." Ferguson asked the court to issue a writ of mandate enjoining the City "from further disciplining [Ferguson] due to the Agreement terms and insufficient evidentiary support, and reinstate [Ferguson] with full back pay and benefits" and alternatively, enjoin the City "from disciplining [Ferguson] by termination, but instead compel [the City] to impose a lesser form of discipline."

The court found that the City had proceeded in the manner required by law. The City's decision was supported by its findings and the findings were supported by the evidence. The court denied the writ petition.

### III

### DISCUSSION

### A.   *Standard of Review*

Ferguson frames his appeal entirely around the question of whether the separation agreement was still valid when the City terminated him. Ferguson urges that, based on the undisputed factual content of the letters exchanged between the parties' lawyers, an independent standard of review applies to the legal issue of anticipatory repudiation: "In administrative mandamus generally we review the record to determine whether the trial court's judgment is supported by substantial evidence. (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 795–796 [55 Cal.Rptr.2d 140].) If, however, the evidence is undisputed, not subject to conflicting inferences and thus involves only an issue of law, then we apply our independent judgment regarding the action of the administrative agency. (*Yordamlis v. Zolin* (1992) 11 Cal.App.4th 655, 660, fn. 3 [14 Cal.Rptr.2d 225]; *Lacy v. California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566] ['In the allocation of adjudicative functions the application of

a legal principle or rule to undisputed facts is said to be a question of law for the appellate courts'].)" (*Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132 [115 Cal.Rptr.2d 294].)

The City counters that the substantial evidence standard, not independent review, applies to the trial court's determination that Ferguson's former attorney, Sergi, was authorized to repudiate the separation agreement on behalf of Ferguson. (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 462–463 [120 Cal.Rptr.3d 797]; *County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1274 [90 Cal.Rptr.2d 41]; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [76 Cal.Rptr.2d 356].) The City also disputes that Ferguson can introduce a new issue on appeal regarding whether he could successfully retract Sergi's repudiation of the separation agreement, made on Ferguson's behalf. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *West Shield Investigations & Security Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 957 [98 Cal.Rptr.2d 612].)

We agree the substantial evidence standard applies, as the court recognized in *Stermer*, the case relied upon by Ferguson. Although we would generally review the penalty imposed for an abuse of discretion (*Kazensky v. City of Merced, supra*, 65 Cal.App.4th at pp. 53–54), Ferguson does not discuss whether there were appropriate alternatives to his discharge, apparently waiving this issue. Furthermore, notwithstanding our agreement that Ferguson is limited in the issues he can raise on appeal, we still give due consideration to Ferguson's contentions.

## B. *Anticipatory Repudiation of the Separation Agreement*

■ " 'Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform [citations]; an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible [citations].

" 'When a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time. [Citation.] However, if the injured party disregards the repudiation and treats the contract as still in force, and the repudiation is retracted prior to the time

of performance, then the repudiation is nullified and the injured party is left with his remedies, if any, invocable at the time of performance. [Citations.]' (*Taylor v. Johnston* (1975) 15 Cal.3d 130, 137–138 [123 Cal.Rptr. 641, 539 P.2d 425].)" (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes, supra*, 191 Cal.App.4th at p. 463; see *Howard S. Wright Construction Co. v. BBIC Investors, LLC* (2006) 136 Cal.App.4th 228, 243 [38 Cal.Rptr.3d 769]; Civ. Code, § 1440.)

The record establishes substantial evidence that Ferguson repudiated the separation agreement. In exchange for the City rescinding his discharge, Ferguson had agreed to forego an administrative appeal, to serve a 160-day suspension, to expedite the criminal proceedings against him, and to resign if he was found guilty by conviction or plea of the enumerated offenses. In June 2007, Ferguson had served his suspension but his criminal case was still ongoing (and not finally resolved until Mar. 2008). In Sergi's letter of June 23, 2007, Sergi unambiguously stated the separation agreement was "null and void," meaning Ferguson no longer agreed to take reasonable steps to expedite his case nor would he resign if he was found guilty. Even if Sergi's statement was based on Ferguson's misinterpretation of the City's actions, the language used in Sergi's letter was an unequivocal repudiation of the separation agreement.

The City responded about 19 or 20 days later by accepting Ferguson's written repudiation of the separation agreement. Nevertheless, Ferguson's new lawyer, Jaramillo, attempted to characterize Sergi's original letter as an anticipatory repudiation that was still subject to being retracted.

According to the legal principles which govern anticipatory repudiation, once Ferguson committed his anticipatory breach on June 23, 2007, the City could then elect its remedies, which in this instance meant the reinstatement of Ferguson's discharge. The City was no longer bound by the separation agreement and was excused from further performance: "The real operation of a declaration of intention not to be bound appears to give the promisee the right . . . to act upon the declaration and treat it as a final assertion by the promisor that he is no longer bound by the contract, and as a wrongful renunciation of the contractual relation into which he has entered. *If [the promisee] elects to pursue the latter course, it becomes a breach of contract, excusing performance on his part and giving him an immediate right to recover upon it as such.* Upon such election the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist . . . ." (*Atkinson v. District Bond Co.* (1935) 5 Cal.App.2d 738, 743 [43 P.2d 867], italics added; see *Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1246 [100 Cal.Rptr.2d 403], citing *Guerrieri v. Severini* (1958) 51 Cal.2d 12, 18–19 [330 P.2d 635] and *Maddy v. Castle* (1976) 58 Cal.App.3d 716, 722 [130 Cal.Rptr. 160].)

■ We reject Ferguson's argument that Sergi had no authority to act on Ferguson's behalf and impair his "substantial rights." In *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645], the California Supreme Court held that an attorney lacked authority to stipulate to arbitrate a medical negligence claim and waive a trial de novo without a client's consent. In the present case, Ferguson characterizes the Sergi letter as the product of a misunderstanding but he does not claim the letter was unauthorized and there is no evidence that Sergi lacked authority from Ferguson; instead the record is silent: "Although it is clear that an attorney may not compromise or surrender a substantial right of the client without his or her express consent, such a rule should not obtain where . . . the record is silent. When there is no evidence whether the client understood his or her rights or consented to the attorney's action, . . . [a] silent record should not lead to an assumption that the client was not adequately informed on the subject and would have refused to consent had he or she been informed. [Citation.]" (*In re Samkirtana S.* (1990) 222 Cal.App.3d 1475, 1485 [272 Cal.Rptr. 489], citing *Blanton, supra,* 38 Cal.3d 396 and *In re Marriage of Helsel* (1988) 198 Cal.App.3d 332 [243 Cal.Rptr. 657].) Based on the record here, Ferguson cannot rebut the presumption that Sergi acted on his behalf in repudiating the separation agreement. (*Duffy v. Griffith Co.* (1962) 206 Cal.App.2d 780, 790 [24 Cal.Rptr. 161].)

We acknowledge Ferguson's 11th-hour argument that he retracted his repudiation of the separation agreement in his letter of July 17, 2009. We cannot address this issue because it was not raised below and a factual record was not developed regarding whether the City detrimentally relied upon Ferguson's anticipatory repudiation. Questions of justifiable reliance constitute questions of fact which cannot be resolved when the facts are disputed. (*West Shield Investigations & Security Consultants v. Superior Court, supra,* 82 Cal.App.4th at p. 957; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780].)

■. We further agree that Ferguson's conduct warrants the penalty of termination for a police officer acting in the public service. (*Warren v. State Personnel Bd.* (1979) 94 Cal.App.3d 95, 100–108 [156 Cal.Rptr. 351]; *Ziegler v. City of South Pasadena* (1999) 73 Cal.App.4th 391, 398 [86 Cal.Rptr.2d 424].)

■ Finally, we are not convinced that, under the circumstances of this case, Ferguson was deprived of his right to a *Skelly* hearing. Due process is a flexible concept. (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1276 [31 Cal.Rptr.3d 297].) In December 2006 and January 2007, Ferguson had already received notice of the proposed discharge, the reasons, a copy of the charges and the evidence, and the right to respond. (*Skelly, supra,* 15

Cal.3d at p. 215.) The second notice contained additional violations which were based on the same misconduct. Furthermore, although the City repeatedly tried to schedule a second *Skelly* meeting and offered various accommodations, including participating by conference call, Ferguson rejected all the proposed alternatives and refused to participate. A second *Skelly* meeting was not required.

## IV

## DISPOSITION

We affirm the judgment and order the City as prevailing party to recover its costs on appeal.

Richli, Acting P. J., and King, J., concurred.